| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------X<br>TIMOTHY BUTLER, #309172,<br><br>         Plaintiff,<br><br>  -against-<br><br>SAZERAC COMPANY FIREBALL MANUFACTURER,<br><br>         Defendant.<br>------------------------------------------------------------------X<br>TIMOTHY BUTLER, #309172,<br><br>         Plaintiff,<br><br>  -against-<br><br>JOHNSON & JOHNSON, and Any Other Company that<br>Manufactured or Used Phenylephrine as an Ingredient for<br>Decongesting,<br><br>         Defendant.<br>------------------------------------------------------------------X | **FILED**<br>**CLERK**<br><br>3:59 pm, Nov 17, 2023<br><br>**U.S. DISTRICT COURT**<br>**EASTERN DISTRICT OF NEW YORK**<br>**LONG ISLAND OFFICE**<br><br>**MEMORANDUM & ORDER**<br>23-CV-7496(GRB)(ARL)<br><br><br><br><br><br>23-CV-7497(GRB)(ARL) |

**GARY R. BROWN, United States District Judge:**

  Before the Court are the applications to proceed *in forma pauperis* ("IFP") filed by *pro se* plaintiff Timothy Butler ("Plaintiff") while incarcerated at the Suffolk County Correctional Facility ("Jail") in relation to his complaints brought pursuant to 42 U.S.C. § 1983 ("Section 1983") against Sazerac Company (the "Fireball Complaint") and Johnson & Johnson[1] (the Decongestant Complaint") (together, "Defendants"). Docket Entry "DE" 1, 2 in each case. For the reasons that follow, the Court grants Plaintiff's applications to proceed IFP and finds that Plaintiff has not alleged a plausible claim in either complaint. Thus, the complaints are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

---

[1] Plaintiff also seeks to impose liability against "any other company that manufactured or used phenylephrine as an ingredient for decongesting."

BACKGROUND

1. Summary of the Complaints[2]

Each brief complaint is submitted on the Court's form for civil rights actions brought pursuant to Section 1983.  *See* DE 1.

A. The Fireball Complaint

In its entirety, in the Fireball Complaint, Plaintiff alleges that, at various locations within Suffolk County, New York, including gas stations, 7/11 stores, and card stores during the period January 2018 to November 2022, he "unknowingly purchased bottles of Fireball" and:

> Assumed they had 30% alcohol not the 13% I have come to find out.  I purchased these products before and after work for years because of the convenience of the stores that sold it.  I did the math on what I spent over the 4 years I consumed it, the cost is well over $75,000.
>
> I'd like to file a diversity[3] fraud case against the owner and manufacturer of the unlabeled 13% alcohol content bottles.  I had to buy more to get the same feeling.  I was only made aware of the fraud in May of 2023.

DE 1 at ¶ II of the Fireball Complaint.  Although Plaintiff left the space of the form complaint blank that calls for a description of any injuries as a result of the challenged events, he seeks to recover a damages award in the sum of $150,000.  (*Id.* ¶¶ II.A.-III.)

B. The Decongestant Complaint

Like the Fireball Complaint, the Decongestant Complaint is brief.  In its entirety, Plaintiff alleges that, at various locations "all over Long Island, New York", including CVS, Medford

---

[2] Excerpts from the complaint are reproduced here exactly as they appear in the original.  Errors in spelling, punctuation, and grammar have not been corrected or noted.

[3] Notably, Plaintiff has not included his pre-incarceration domicile, nor has he alleged where the Sazerac Company is domiciled.  (*See* Fireball Complaint, DE 1 in toto and at ¶¶ I.A-B.)

2

Pharmacy, Rite Aid, and Genovese during the period January 1996 to the present, he:

> purchased thousands of dollars worth of products manufactured by Johnson & Johnson to alleviate decongestion for myself, my 4 children and my wife that has extremely bad allergies. I was buying products every four days for years to no satisfaction because the ingredient phenylephrine was labeled as a decongestant but in fact proven by the FDA the chemical and products did not alleviate congestion symptoms at all. This is a case of fraud with dollar amount over $75,000. I feel my wife's constant congestion issues played into her filing divorce. She could never enjoy anything. She could barely breathe. Diversity fraud.

DE 1 at ¶ II of the Decongestant Complaint. Again, Plaintiff left the space of the form complaint blank that calls for a description of any injuries as a result of the challenged events, yet seeks to recover a damages award in the sum of $150,000. (*Id.* ¶¶ II.A.-III.)

## LEGAL STANDARDS

The Second Circuit has established a two-step procedure wherein the district court first considers whether plaintiff qualifies for *in forma pauperis* status, and then considers the merits of the complaint under 28 U.S.C. § 1915(e)(2). *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983).

### I. *In Forma Pauperis*

Upon review of the IFP applications, the Court finds that Plaintiff is qualified by his financial status to commence these actions without the prepayment of the filing fees. Therefore, the applications to proceed IFP (DE 2 in each case) are granted.

### II. Sufficiency of the Pleadings

As Judge Bianco summarized,

> A district court is required to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii). The Court is required to dismiss the action as soon as it makes such a determination. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii).

3

> It is axiomatic that district courts are required to read *pro se* complaints liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010), and to construe them "'to raise the strongest arguments that [they] suggest [ ].'" *Chavis*, 618 F.3d at 170 (quoting *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd*, --- U.S. ----, 133 S. Ct. 1659, 185 L. Ed. 2d 671 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678 (citation omitted).
>
> Notwithstanding a plaintiff's *pro se* status, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

*Patrick v. Bronx Care*, No. 14-CV-7392 (JFB)(AKT), 2014 WL 7476972, at *1-2 (E.D.N.Y. Dec. 31, 2014).

## DISCUSSION

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 "creates no substantive rights; it provides only a procedure for

4

redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To maintain a Section 1983 action, a plaintiff must show that the defendant (1) acted under color of state law (2) to deprive the plaintiff of a right arising under the Constitution or federal law. *See id*. The Court analyzes plaintiff's Section 1983 claim below.

**I.      Lack of State Action or a Constitutional Deprivation**

Plaintiff names two private entities – Sazerac and Johnson & Johnson - as the sole Defendants. Wholly absent are any allegations suggesting that either defendant acted under color of state law. Further, although he used the Section 1983 complaint form in both cases, he does not allege the deprivation of any constitutional right. Thus, Plaintiff's Section 1983 claims are not plausible and are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(i)-(ii); 1915A(b)(1).

**II.     Subject Matter Jurisdiction**

Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if they lack subject matter jurisdiction. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 01 (2d Cir. 2000). A plaintiff seeking to bring a lawsuit in federal court must establish that the court has subject matter jurisdiction over the action. *See Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (citing *Sharkey v. Quarantillo*, 541 F.3d 75, 82 (2d Cir. 2008)). If a district court lacks subject matter jurisdiction, it must dismiss the action. *See* FED. R. CIV. P. 12(h)(3); *see also Lussier*, 211 F.3d at 701. This Court has an obligation to examine its subject matter jurisdiction *sua sponte. See Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006).

Given the dismissal of Plaintiff's Section 1983 claim (*see supra*), federal question subject matter jurisdiction does not lie in this Court. *See* 28 U.S.C. § 1331. Plaintiff appears to also seek

to invoke diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332 which requires both diversity of citizenship and an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332; *Perry v. Robles*, 23-CV-7492(LTS), 2023 WL 6881993, at *2 (S.D.N.Y. Oct. 16, 2023) ("To establish the court's diversity jurisdiction, a plaintiff must first show that he and the defendants are citizens of different States. . . . The plaintiff must also allege to a 'reasonable probability' that his or her claims are in excess of the sum or value of $75,000, the statutory jurisdictional amount." (citing *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (cleaned up) (additional citation omitted).

To establish diversity jurisdiction, there must be complete diversity of citizenship between the plaintiff and the defendants. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005). This means that a plaintiff cannot be a citizen of the same state as any of the defendants. *St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant."). Courts evaluate diversity "by examining citizenship as of the time suit is commenced," *Housand v. Heiman*, 594 F.2d 923, 926 n. 6 (2d Cir. 1979), and "[a]n individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). In addition, a prisoner "retains his pre-incarceration domicile," and the Court must therefore look to that state when evaluating whether diversity exists between the parties. *Poucher v. Intercounty Appliance Corp.*, 336 F. Supp. 2d 251, 253 (E.D.N.Y. 2004); *Blumatte v. Quinn*, 521 F. Supp. 2d 308, 312 n.3 (S.D.N.Y. 2007) (explaining that there is a rebuttable presumption that a prisoner retains his or her pre-incarceration domicile).

Here, Plaintiff has not only omitted his pre-incarceration place of citizenship, he has wholly

6

failed to allege the defendants' citizenship.  *See* DE 1, *in toto*, in each case.  In the absence of this information, it is impossible for this Court to find that diversity jurisdiction lies.  Given that the Defendants are artificial entities, Plaintiff must include the state of incorporation and principal place of business for each defendant in his complaints. 28 U.S.C. § 1332(c)(1).

Further, although Plaintiff alleges that the amount in controversy is $150,000 in each case, (DE 1 at ¶¶ III), there are no facts alleged in support of that amount.  *See* DE 1, *generally*.  Rather, Plaintiff alleges in each case that his actual damages are "well over" $75,000 given that he has allegedly purchased: (1) the challenged Fireball product twice per day for four years; and (2) the challenged decongestants "every four days for years" during the period from 1996 to the present (DE 2 at ¶¶ II, III in each case). "'[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted.'" *GW Holdings Grp., LLC v. U.S. Highland, Inc.*, 794 F. App'x 49, 51 (2d Cir. 2019) (summary order) (quoting *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982); *also citing Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994) ("Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings.")).  However, as the Second Circuit recently reiterated, the allegations must establish a "reasonable probability that the amount-in-controversy requirement is satisfied." *Agoliati v. Block 865 Lot 300 LLC*, No. 22-51, 2023 WL 405769, at *2 (2d Cir. Jan. 26, 2023) (quoting *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (internal quotation marks and additional citation omitted)).[4]  Given

---

[4] For example, assuming Plaintiff's allegations are true as this Court must, even if he purchased a bottle of Fireball at .99 cents twice per day every day for four years, he would have spent $2,816.00, well-below the $75,000 threshold. (*See* DE 1 in 23-CV-7496 at ¶ 2; Compl. *Marquez et al. v. Sazerac Co., Inc.*, 23-CV-00097 (N.D. Ill. Jan. 7, 2023) (alleging Fireball Cinnamon Shots are sold "in supermarkets [and convenience stores] in small bottles for 99 cents").

7

that Plaintiff has not satisfied the diversity of citizenship requirement, the Court need not reach the amount in controversy question at this time. Thus, subject matter jurisdiction does not lie in this Court.

### III. Leave to Amend

A *pro se* plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted). However, leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

However, given Plaintiff's *pro se* status, in an abundance of caution, the Court grants leave to amend the complaints to afford him an opportunity to allege as plausible claim and to establish that subject matter jurisdiction lies in this Court in accordance with the guidance set forth above. If Plaintiff chooses to amend his complaints, he shall do so within thirty (30) days from the date of this Order. Each amended complaint shall be clearly labeled "Amended Complaint" and shall bear docket number 23-CV-7496(GRB)(ARL) for claims concerning Fireball and 23-CV-7497(GRB)(ARL) for claims concerning decongestants. If Plaintiff does not timely file an amended complaint in each case, judgment shall enter without further notice in each case and the cases will be closed. Alternatively, Plaintiff may pursue any valid claims he may have in state court.

### IV. Section 1915 Privilege

The Second Circuit has long-established that "the benefit of § 1915 is a privilege, not a right . . . and that the court's 'extra measure of authority' in dealing with § 1915 actions is necessary because frivolous suits unduly burden the courts, sometimes obscuring meritorious claims,

8

occasion significant expenditures of public monies, and are a means by which plaintiffs can use the federal government to harass individual defendants." *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983) (citations omitted). As *in forma pauperis* status is not a constitutional right but rather a congressionally created benefit, it can be extended or limited by Congress. *Polanco v. Hopkins*, 510 F.3d 152, 156 (2d Cir. 2007) (citation omitted). Indeed, to help staunch a "flood of nonmeritorious" prisoner litigation, the Prison Litigation Reform Act of 1995 (PLRA) established what has become known as the three-strikes rule. *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1723 (2020) (citing *Jones v. Bock*, 549 U.S. 199, 203, 127 S.Ct. 910 (2007)). That rule generally prevents a prisoner from bringing suit *in forma pauperis*—that is, without first paying the filing fee—if he has had three or more prior suits "dismissed on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted." *Id.* (quoting 28 U.S.C. § 1915(g)).

In determining when a plaintiff should receive a strike for a dismissed case under section 1915(g), the Second Circuit has made clear that district courts should not impose strikes in its dismissal orders. *See Barreto v. Cnty. of Suffolk*, 455 F. App'x 74, 76 (2d Cir. 2012) (citing *Deleon v. Doe*, 361 F.3d 93, 95 (2d Cir. 2004)). Rather, a district court should only consider whether a plaintiff has three strikes if it appears that the plaintiff has run afoul of section 1915(g) and is barred from proceeding *in forma pauperis* in the instant action. *See id.* As such,

> [T]he district court judgments should clearly set forth the reasons for dismissal, including whether the dismissal is because the claim is "frivolous," "malicious," or "fails to state a claim," whether it is because the prisoner has failed to exhaust an available administrative remedy, or for other reasons.
>
> Clarifications of this sort will undoubtedly assist subsequent courts that must determine whether a plaintiff is barred from maintaining an action *in forma pauperis* by the three strikes rule of Section 1915(g).

9

*Deleon*, 361 F.3d at 95 (citing *Snider v. Melindez*, 199 F.3d 108, 115 (2d Cir. 1999)) (purgandum).[5]

Incarcerated litigants face a greater risk of various harms while in prison, including physical injuries, poor prison conditions, inadequate medical care, and other constitutional deprivations, making their access to relief from the judicial system of the utmost importance. This access, however, when done through IFP status, is not unrestricted and the indigent prisoner should be made aware of the limitations. Once a prisoner accrues three dismissals based on either frivolousness, maliciousness, or for failure to state a claim, that prisoner will be prohibited from commencing another action or appeal *in forma pauperis* unless he is in imminent physical danger—regardless of the meritoriousness of the case. *See, e.g.*, *Polanco*, 510 F.3d at 155 (affirming dismissal of prisoner's *in forma pauperis* action alleging claims of exposure to mold and unjust discipline based on the three-strikes rule); *Fate v. New York*, No. 19-CV-4107 (CS), 2021 WL 1177966, at *7 (S.D.N.Y. Mar. 26, 2021) (dismissing prisoner's *in forma pauperis* case alleging campaign of police harassment and retaliation and a physical assault under the three-strikes rule). Indeed, "[r]equiring prisoners to make economic decisions about filing lawsuits does not deny access to the courts; it merely places the indigent prisoner in a position similar to that faced by those whose basic costs of living are not paid by the state." *Nicholas v. Tucker*, 114 F.3d 17, 21 (2d Cir. 1997) (citation omitted).

Here, the Court does not impose any strikes against the plaintiff but will note, however— for the *pro se* plaintiff's benefit—that the statute under which he is proceeding is a privilege subject to revocation. And the plain language of § 1915(g) suggests that such revocation is compulsory

---

5 *See Farmers Property and Casualty Insur. Co. v. Fallon*, No. 21-CV-6022 (GRB)(ARL), 2023 WL 4975977, at *3 n.6 (E.D.N.Y. Aug. 3, 2023) (discussing use of "purgandum" to indicate the removal of superfluous marks for the ease of reading).

10

in the face of abuse. *See* 42 U.S.C. § 1915(g) ("*In no event* shall a prisoner bring a civil action or proceeding under this section if the prisoner has [violated the three-strike rule] unless the prisoner is under imminent danger of serious physical injury.") (emphasis added); *see also Lomax*, 140 S. Ct. at 1723–24 ("That provision bars further IFP litigation once a prisoner has had at least three prior suits dismissed on specified grounds."). Accordingly, the plaintiff proceeding *in forma pauperis* here is cautioned that should either of the instant actions be dismissed as frivolous, malicious, or for failure to state a claim, such dismissals may be considered strikes by a future court and contribute to the determination that he has violated the three-strikes rule of § 1915(g), barring him from commencing further actions or appeals *in forma pauperis*.

## CONCLUSION

Based on the foregoing, Plaintiff's applications to proceed IFP (DE 2 in each case) are granted. However, complaints are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) and 1915A(b)(1). Plaintiff is afforded an opportunity to amend his complaints as set forth above within thirty (30) days from the date of this Order. If Plaintiff does not timely file an amended complaint in each case, judgment shall enter without further notice and these cases will be closed.

The Clerk of the Court shall mail a copy of this Order to the *pro se* Plaintiff at his address of record and note service on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED**.

Dated:    November 17, 2023                              /s/ Gary R. Brown
          Central Islip, New York                        GARY R. BROWN
                                                         United States District Judge

11